IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUZ R.[1], | : | |
|     *Plaintiff,* | : | CIVIL ACTION |
| v. | : | No. 22-4902 |
| | : | |
| CAROLYN COLVIN[2], | : | |
| **Commissioner of Social Security,** | : | |
|     *Defendant.* | : | |

### MEMORANDUM

**JOSÉ RAÚL ARTEAGA**                                                                                                        December 9, 2024
**United States Magistrate Judge[3]**

      The Commissioner of the Social Security Administration, through an Administrative Law Judge ("ALJ"), denied Luz R.'s claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383. Luz R. seeks judicial review of the

---

      [1] Luz R. is referred to solely by her first name and last initial in accordance with this Court's standing order addressing party identification in social security cases. *See* Standing Order, In re: Party Identification in Social Security Cases (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Oct. 28, 2024).

      [2] Carolyn Colvin became the Acting Commissioner of Social Security on November 30, 2024, and she is substituted as the Defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d).

      [3] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (ECF 10, 18).

final administrative decision under 42 U.S.C. § 405(g) and 1383(c)(3)[4] and asks the Court to reverse and remand the Commissioner's decision.

After careful review of the record, Luz R.'s request for review is granted, and the Commissioner's decision is remanded for further consideration.

I.   **BACKGROUND**

Luz R. protectively filed for DIB and SSI in October 2020, alleging disability beginning February 1, 2020 based on nerve damage (left leg), disc protrusion/bulge (lower back, upper back), migraines, generalized anxiety disorder, and major depressive disorder. (Tr. 92, 267-82.) She was 52 years old at the time, defined as an individual closely approaching advanced age. 20 C.F.R. §§ 404.1563, 416.963. Initially, her claims were denied, and she timely filed a hearing request. (Tr. 177, 187, 207.) ALJ Margaret M. Gabell held a hearing on November 3, 2021. (Tr. 60-89, 226.) All participants attended the hearing by telephone due to the COVID-19 Pandemic. (Tr. 16.) Luz R. and the Agency's Vocational Expert ("VE") Mary Beth Kopar testified. (*Id.*)

On December 8, 2021, the ALJ found Luz R. not disabled under the Social Security Act. (Tr. 16-31.) The ALJ determined that Luz R. had the residual functional capacity ("RFC") to perform "light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except occasional postural activities; no kneeling/crawling; no foot controls; no climbing ladders, ropes, or scaffolds; no unprotected heights; occasional climbing of ramps and

---

[4] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

stairs" and the ability "to alternate from standing to sitting every 60 minutes, with a 10-minute change of position . . . ."[5] (Tr. 22.) She found that Luz R.'s RFC precluded her past relevant work as a packager, cleaner, baker helper, food sales clerk, check cashier, case aide, and cashier checker. (Tr. 29.) Still, the ALJ found jobs that existed in significant numbers in the national economy that Luz R. could have performed. (Tr. 30.) The VE testified that Luz R. "would have been able to perform the requirements of representative occupations such as: marker . . . , photocopy operator[6] . . . , and order caller . . . ."(*Id.*) Based on the VE's testimony, the ALJ concluded that Luz R. was not disabled because "[she] was capable of making a successful adjustment to other work that exist[ed] in significant numbers in the national economy." (Tr. 31.)

Luz R. asked the Appeals Council to review this decision, but on October 24, 2022, the Appeals Council denied her request. (Tr. 1-7.) The ALJ's December 8, 2021 decision then became the Commissioner's final act. On appeal here, Luz R. argues the ALJ committed reversible error by improperly evaluating her treating physician's opinion and by finding the Agency's consultative examiner's opinion was "persuasive," but failing to either adopt the limitations included in that opinion or to explain their omission when determining her RFC. (ECF 15 at 1.)

---

[5] The ALJ also determined that Luz R. was to avoid temperature extremes and only have occasional exposure to dust, odors, wetness, gases, fumes, and poorly ventilated areas. (Tr. 22.)

[6] The VE originally noted there were 100,000 marker positions and 40,000 photocopy operator positions in the national economy. With the addition of a sit/stand option, the VE reduced the number of jobs by fifty percent.

**II.     LEGAL STANDARDS**

Working through ALJs, the Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner determines whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment;[7] (3) has impairment(s) that meet or medically equal a listed impairment;[8] (4) has the capacity to do past relevant work, considering her RFC[9]; and (5) is able to do any other work, considering her RFC, age, education, and work experience. *Id.* §§ 404.1520(a), 416.920(a).

The burden of proof is on the claimant at all steps except step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). At step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her

---

[7] A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c).

[8] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[9] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (*e.g.*, pain). 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* §§ 404.1545(a)(2), 416.945(a)(2).

medical impairments, age, education, past work experience, and [RFC]." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The Social Security Act requires an ALJ to state the "reason or reasons upon which [a denial of benefits] is based." 42 U.S.C. § 405(b)(1). An ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F. 4th 637, 639 (3d Cir. 2024). ALJs must "explain only the dispositive reasons for their decisions, not everything else that they considered." *Id.* Said otherwise, ALJ's "must always explain the reasons for their decisions. But that does not mean always explaining all the factors." *Id.* The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted). The Court reads the ALJ's decision "as a whole" to determine whether the record was sufficiently developed. *Id.*

Any legal issues the ALJ decides are subject to the Court's "plenary review." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). This Court's review of the Commissioner's final decision is limited to the question of whether the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C § 405(g); *Johnson*, 529 F.3d at 200. "[T]he threshold for such evidentiary sufficiency is not high . . . ." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted). It is "more than a mere scintilla but may be somewhat less than a

preponderance of evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). A "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Nazario v. Comm'r of Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

Where substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 359 (3d Cir. 2011). Courts defer to the ALJ's assessment of the evidence, which will not be undermined by contrary evidence so long as the ALJ "explain[s] what evidence he [or she] found not credible and why." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citation omitted). In other words, reviewing courts must affirm the Commissioner if substantial evidence supports his decision, even if they would have decided the case differently. *See Fargnoli*, 247 F.3d at 38. The Court cannot substitute its own judgment for that of the factfinder. *Zirnsak*, 777 F.3d at 611 (citation omitted). Therefore, the question before this Court is not whether Luz R. is disabled but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached upon a correct application of the law.

## III. DISCUSSION

Although the threshold for substantial evidence is low—"only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" the record does not support a finding that substantial evidence supports the Commissioner's

determinations. *Biestek*, 587 U.S. at 103. For the reasons stated below, remand is warranted.

### A. The ALJ's Evaluation of Treating Physician Dr. Michalisin's Opinion is Not Supported by Substantial Evidence.

Luz R. challenges the adequacy of the ALJ's explanation for finding that her treating physician Dr. Joseph Michalisin's opinion was not persuasive. (ECF 12 at 11.) The Commissioner responds that the ALJ's evaluation comported with governing regulations and was supported by a "detailed, record-based explanation." (ECF 14 at 8-9.) Having reviewed the record, the Court agrees with Luz R. that the ALJ's explanation for discounting her treating physician's opinion was inadequate.

ALJs "must *consider* a range of factors" when they weigh medical opinions, but all they must *explain* are the reasons for their decisions." *Zaborowski*, 115 F.4th at 638 (emphasis in original). An ALJ's consideration of medical opinion evidence is governed by regulations that focus on the persuasiveness of each medical opinion. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[10] Supportability and consistency "are the most important factors" to be considered. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations also instruct an ALJ to consider a medical source's relationship with a claimant, whether the medical source "has received advanced education and training" as a specialist, and other

---

[10] In contrast, the regulations governing applications filed prior to March 17, 2017, spoke in terms of the weight to be given each opinion, including controlling weight for the opinions of certain treating sources. 20 C.F.R. §§ 404.1527, 416.927.

factors such as the medical source's familiarity with other evidence. *Id.* §§ 404.1520c(c), 416.920c(c).

"[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Nolf v. Comm'r of Soc. Sec.*, No. 22-368, 2023 WL 8437872, at *1 (W.D. Pa. Dec. 4, 2023) (quoting *Cook v. Comm'r of Soc. Sec.*, No. 20-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021)). When considering supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). When considering consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). To ensure an adequate, articulated rationale, an ALJ is required to provide a written explanation of "how [he or she] considered the supportability and consistency factors" with respect to a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The regulations only require an ALJ to explain the dispositive reasons for her decision. *Zaborowski*, 115 F.4th at 639. If supportability and consistency are not dispositive because "opposing medical opinions are equally well-supported and

consistent", an ALJ must then "articulate how [they] considered the other most persuasive factors." *Id.* (citing 20 C.F.R. § 404.1520c(b)(3)). While an ALJ is, of course, not obligated to accept physicians' conclusions, "[they] must discuss the evidence that supports the decision, the evidence that [they] rejected, and explain why [they] accepted some evidence but rejected other evidence. *Byrd v. Comm'r of Soc. Sec.*, No. 23-4957, 2024 WL 4631645, *8 (E.D. Pa. Oct. 30, 2024) (citations omitted).

Luz R. began treating with Dr. Michalisin, a family physician, in July 2021 for chronic left-sided lower back pain with left-sided sciatica, lumbar disc disease with radiculopathy, lumbar disc herniation, and carpal tunnel syndrome. (Tr. 1875.) On an October 2021 medical opinion form regarding Luz R.'s functional limitations, Dr. Michalisin opined that she would be limited to sitting, standing, and walking for less than an hour each day and would need to alternate between sitting and standing every 20 minutes. (Tr. 1876.) He further reported that she could maintain attention and concentration for less than 15 minutes, and frequently lift ten pounds or less, but never 20 pounds or more.[11] (Tr. 1875-76.) The ALJ found Dr. Michalisin's opinion "not persuasive," but provided only a limited explanation for rejecting it. (Tr. 28.)

An ALJ "must *always discuss* the two most important factors: supportability and consistency." *Zaborowski*, 115 F.4th at 639 (emphasis added). Here, the ALJ's explanation

---

[11] Dr. Michalisin also opined that Luz R. did not need a cane or other assistive device, did not have limitations using foot controls, could continuously handle, balance, kneel, and crouch, could occasionally tolerate exposure to extreme heat and operate a motor vehicle, but could rarely tolerate exposure to extreme cold and never dust, odors, fumes, or pulmonary irritants. (Tr. 1877-78.)

is little more than a conclusory assertion that the opinion was neither supported by Dr. Michalisin's own records nor consistent with the other medical opinions in the record. *See* (Tr. 23-28.)  The ALJ failed to cite any records that the opinion is allegedly inconsistent with or unsupported by, and only briefly mentioned the notes of one of Dr. Michalisin's examinations.  *Cf.*, *Zaborowski*, 115 F.4th at 640 (finding the ALJ's explanation sufficient where the ALJ stated an opinion was "not consistent with the record that shows that the claimant has social avoidance issues, but he is able to cope within his limits") (internal quotation marks omitted).  The ALJ cited Exhibit 16F, generally, but the exhibit is twenty pages long and includes notes from multiple physicians, so the Court can only speculate as to what exactly the ALJ was referencing.[12]  (Tr. 1883-1903.)  Although the ALJ was not required to explain "everything" she considered, she was still required to explain "the dispositive reasons" for her decision.  *Zaborowski*, 115 F.4th at 639.  Where the Third Circuit recently found an ALJ's supportability and consistency analysis sufficient, the ALJ cited to specific evidence in the record in explaining the weight given to each opinion. *See id.* at 639-40; *see also Zaborowski v. Kijakazi*, 2023 WL 2920286, *5-6 (E.D. Pa. Apr. 12, 2023). Here, in contrast, the ALJ neglected to provide any citations in her consistency analysis and the Court can only speculate regarding the evidence she considered in rendering her supportability determination.

The rest of the ALJ's decision does not remedy her evaluation of Dr. Michalisin's opinion.  The administrative record is replete with medical records and function reports

---

[12] Exhibit 16F was cited only in reference to the "supportability" of Dr. Michalisin's opinion.  (Tr. 28.)

documenting Luz R.'s impairments, including severe back and leg pain, balance issues, numbness and tingling in her legs and feet, and limitations with walking, standing, and dynamic activity. Chief among such records are Luz R.'s physical therapy reports. *See e.g.*, (Tr. 540, 549, 568, 716, 757-58, 831-32, 861, 983, 1098, 1123, 1125, 1126, 1136, 1142, 1191.) As of January 7, 2021, after twenty-eight skilled physical therapy sessions, Luz R. was "objectively . . . continu[ing] to exhibit severely decreased/painful" lumbar spine range of motion, decreased lower extremity strength, hypersensitivity through the lower left extremity, severe tenderness to palpitation through the left piriformis, and adverse neural tension through the left sciatic nerve. (Tr. 1125.) Luz R.'s medical records also document her continued difficulty walking and standing, including her inability to walk half of a block before having to stop due to increasing pain. (Tr. 517, 549, 580, 680, 758, 1126, 1136.) The ALJ even recognized that "the objective evidence supports abnormalities of the lumbar spine." (Tr. 26.) Absent from the ALJ's summary, however, is any explanation of how this evidence does not support and is inconsistent with Dr. Michalisin's opinion, even though 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) require the ALJ to "illustrate that [she] considered the appropriate factors in reaching [her] conclusions." *Lynch v. Comm'r of Soc. Sec.*, No. 23-1982, 2024 WL 2237961 (3d Cir. May 17, 2024) (citing *Jones*, 364 F.3d at 505) (alteration in original).

Since a review of the record demonstrates that the ALJ failed to provide a sufficient explanation for the weight given to the medical evidence, the Court cannot say that her decision was supported by substantial evidence. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). While substantial evidence is a "low threshold," more than

conclusory statements are needed to permit meaningful judicial review, as the ALJ must still "always explain the reasons" for her decision. *Zaborowski*, 115 F.4th at 639-40.

### B. The ALJ Erred by Either Failing to Adopt or to Sufficiently Explain Her Reasons for Rejecting, Limitations Opined by Dr. Stone.

Luz R. challenges the ALJ's RFC assessment, arguing that the ALJ improperly failed to include a limitation on walking and standing, even though she gave the most weight to Dr. Marielle Stone's opinion containing limitations on walking and standing at work. Luz R. contends that the RFC finding that she is capable of "light work"—which "requires a good deal of walking or standing,"[13]—is incompatible with Dr. Stone's opined limitations. (ECF 12 at 4-5.) The Commissioner responds that the ALJ "did not mischaracterize or ignore relevant portions of Dr. Stone's opinion." (ECF 14 at 10.) He argues that Luz R.'s argument is unsupported by the record and that walking and standing restrictions were unwarranted because Luz R. had a normal gait on examination. (*Id.*) This is an inaccurate statement of the medical record.[14] Moreover, the Commissioner cannot now do what the ALJ should have done by now providing analysis

---

[13] 20 C.F.R. §§ 404.1567(b), 416.967(b).

[14] For example, on August 13, 2020, Luz R. demonstrated decreased sensation in her left lower extremity. (Tr. 580.) She also had an antalgic gait on exam. (*Id.*) At a physical therapy examination the same month, she again demonstrated decreased lower extremity sensation and decreased stability. (Tr. 572, 574). In November 2020, she demonstrated severe hypersensitivity to left-sided light touch. (Tr. 907-09.) In December 2020, the consultative examiner found that Luz R. had an antalgic gait. (Tr. 678.) In January 2021, she had decreased lower extremity strength and altered sensation through her left lower extremity. (Tr. 757-61.) In May 2021, she demonstrated decreased reflexes and sensations. Later that month, she was also noted to have decreased pedis and tibial pulses, as well as diminished monofilament sensation. (Tr. 1404.)

or evidentiary support that the ALJ's decision lacks. (*Id.* at 8-10[15].) *See Fargnoli*, 247 F.3d at 42. The Court looks to the ALJ's decision to determine whether her analysis satisfies the relevant standards. For the reasons discussed below, the ALJ has not met her burden of articulation and the ALJ's RFC explanation does not meet the substantial evidence standard.

The RFC is the most a claimant can do in a work setting despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361. When determining a claimant's RFC, the ALJ has a duty to consider all the evidence of record. *Fargnoli*, 247 F.3d at 41. "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Diaz*, 577 F.3d at 505 (citation omitted). The ALJ is required to include in the RFC any credibly established limitation supported by the record. *See Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019).

When determining the RFC, the ALJ must "set forth the reasons for h[er] decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981)). Although her analysis need not "use particular language or adhere to a particular format," the ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful judicial review." *Jones*, 364 F.3d at 505. Her decision must set out "a clear and satisfactory explication of the basis

---

[15] The Commissioner relies on evidence that the ALJ neither cited nor discussed.

on which it rests." *Cotter*, 642 F.2d at 704. Remand may be warranted where an ALJ fails to incorporate all credibly established functional limitations without sufficiently explaining the omission. *See Edwards v. Kijakazi*, No. 21-1429, 2023 WL 6387370 (E.D. Pa. Sept. 29, 2023) (listing cases remanded for ALJ's failure to explain reason for rejecting or not addressing relevant probative evidence).

Here, the ALJ found that Luz R. has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), subject to certain occasional postural limitations.[16] (Tr. 22.) "[T]he full range of light work requires standing or walking, on and off, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10 at *6. Therefore, when the ALJ decided whether Luz R. is capable of light work, the pertinent inquiry was whether she can stand or walk "on and off" for "approximately 6 hours" daily. *Id.*

In making the RFC determination, the ALJ found the opinion of the Agency's consultative examiner, Dr. Stone, to be "persuasive" without any qualifiers—the highest weight afforded to any medical opinion in the record. (Tr. 28.) Dr. Stone opined, *inter alia*, that Luz R. could occasionally lift and carry 20 pounds or less, could sit for one hour at a time, walk for 10 minutes at a time, stand for 15 minutes at a time, and needed to change positions "frequently." (Tr. 678-95.) She further opined that Luz R. "could not walk a block at a reasonable pace on rough or uneven surfaces," and could walk just three

---

[16] The ALJ limited Luz R. to work involving no kneeling/crawling; no foot controls; no climbing ladders, ropes, or scaffolds; no unprotected heights; occasional climbing ramps and stairs; avoid temperature extremes; occasional exposure to dust, odors, wetness, gases, fumes, and poorly ventilated areas. (Tr. 22.)

hours and stand for two hours in an 8-hour workday. (Tr. 684, 688.) During the physical examination, Dr. Stone observed that Luz R. had an "antalgic gait" and was "unable to stand still because of low back pain." (Tr. 680.) She also found that Luz R. could only stand for 15 minutes and walk for 10 minutes at a time and needed to "change positions frequently." (Tr. 684.)

Despite Dr. Stone's findings, the ALJ neglected to include any limitation on Luz R.'s ability to stand and walk in the hypothetical she posed to the VE or in the RFC, instead only finding Luz R. was capable of "light exertional level work" and "would need to alternate from standing to sitting maybe every 60 minutes." (Tr. 83.) The ALJ did not explain why she rejected Dr. Stone's walking and standing limitations or if she, in fact, considered and rejected them, as opposed to ignoring them. A plain reading of Dr. Stone's opinion—the *only* opinion the ALJ found "persuasive" without any qualifiers—suggests that Luz R. would be unable to walk or stand for the entire six hours required in light work. These limitations are inconsistent with light work, and given their omission from the RFC, it suggests that the ALJ found this part of Dr. Stone's opinion unpersuasive. However, absent any explanation, the Court cannot determine whether the ALJ properly rejected this aspect of Dr. Stone's findings and appropriately omitted any standing/walking limitation from the VE's consideration. *See Ramirez v. Barnhart*, 372 F.3d 546, 553-55 (3d Cir. 2004) (explaining that a hypothetical question posed to a VE must reflect all of a claimant's impairments, and any omitted limitation must have a valid explanation). While the ALJ was not required to include every limitation opined by Dr. Stone, because she found this opinion to be the most persuasive, she needed to provide

some explanation regarding her decision to omit a credible limitation from the RFC. *See Simon v. Kijakazi*, No.20-2064, 2022 WL 828935, *9 (M.D. Pa. Mar. 18, 2022).

Restrictions on Luz R.'s ability to walk and stand are supported by other medical evidence in the record. For example, Dr. Gaye Gustitus, a state agency physician whose opinion the ALJ found "generally persuasive," opined that Luz R. could stand and walk for no more than four hours in an eight-hour workday. (Tr. 100.) The ALJ described this as a "reduced range of light work," but it is more consistent with sedentary work. *See* SSR 83-10. However, since the RFC does not include any of the standing or walking limitations found by many medical sources in the record, the Court can only assume that the ALJ instead adopted the single contradictory reconsideration opinion from non-examining state agency physician Dr. Catherine Smith. Dr. Smith opined that Luz R. could stand and walk for six hours a day, but still, the ALJ failed to explain the implied rejection of the limitations that Dr. Stone found, as is required for judicial review. (Tr. 27) The ALJ even appears to suggest that Dr. Smith's limitations were insufficient, noting that she found Dr. Smith's opinion inconsistent with examinations of Luz R., which reported "decreased range of motion, strength and tenderness to palpation, and support the accommodation of a sit/stand option." (*Id.*)

When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain her resolution of the conflict. *Burnett*, 220 F.3d at 121. The Court cannot speculate as to what the ALJ was thinking regarding the contradictions in her analysis. Rather, it was the ALJ's obligation to sufficiently explain her rationale to permit meaningful judicial review. *See Kephart v. Richardson*, 505 F.2d 1085, 1090 (3d Cir. 1974)

("It is incumbent upon the examiner to make specific findings – the court may not speculate as to [her] findings."). Given the absence of an adequate explanation for the contradictory assessments of Dr. Stone's opinion, the Court cannot properly determine whether substantial evidence supports the ALJ's decision. Remand is required for consideration of this issue.

### C. Remand is the Appropriate Remedy.

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Where, as here, conflicting evidence has not been resolved, or the ALJ has not discussed all the relevant evidence, remand is appropriate. *See Fargnoli*, 247 F.3d at 40.

The ALJ's failure to sufficiently explain why she rejected Dr. Michalisin's entire opinion was not harmless error, nor was her apparent rejection of the limitations opined by Dr. Stone. Both opinions included restrictive findings that, had they been incorporated into the RFC, may have resulted in a different conclusion about Luz R.'s ability to perform the jobs that the vocational expert identified. Thus, the Court cannot conclude that the ALJ's deficient evaluation of the evidence is harmless. *Rutherford*, 399 F.3d at 553. This is particularly so where, as here, Luz R. would qualify as "disabled" if she were limited to only sedentary work. 20 C.F.R. Pt. 404 Subpt. P, App. 2, § 201.00(g) ("Individuals approaching advanced age (50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals . . . can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled

normally obtains."). A final assessment of the evidence requires an ALJ's thorough consideration and development on remand.

Nothing in this opinion should be deemed as expressing a view on the ultimate outcome of any evidence reassessment. Rather, that task remains the duty and province of the ALJ on remand.[17]

## IV.   CONCLUSION

For these reasons, Luz R.'s request for review is GRANTED. The Commissioner's final decision is REVERSED, and this matter is REMANDED for further proceedings consistent with this Opinion.

An appropriate Order follows.

---

[17] Because Luz R.'s additional claims of error may be remedied through remand, the Court declines to address them here. Remand may produce a different result, so it may render any discussion moot. *See Bruce v. Berryhill*, 294 F. Supp. 3d 346, 364 (E.D. Pa. 2018).